# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JULIE W.,[1]
    Plaintiff,

  vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:21-cv-185

Black, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff Julie W. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security ("Commissioner")

finding her disability ceased on February 1, 2018, and she no longer qualified for disability

insurance benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before the

Court on plaintiff's Statement of Errors (Doc. 14) and the Commissioner's response in

opposition (Doc. 20).[2]

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[2] The Court notes that plaintiff did not file a reply memorandum in this matter despite filing two motions for extensions of time to file a reply to defendant's response in opposition. (*See* Docs. 21, 22, 24, 25). Rather, on May 16, 2022, plaintiff filed a "supplemental statement of specific errors" without providing a reason why the statement of specific errors was supplemented. (Doc. 26). As best the Court can discern, it appears that plaintiff supplemented her statement of errors following the filing of the "Supplemental Certified Administrative Record" (Doc. 23), which includes, "a true and accurate copy of the ALJ Hearing Decision dated March 12, 2020." (*Id*. at PAGEID 3358). However, other than the omission of a single sentence in the first paragraph, the "statement of specific errors" (Doc. 14) and the "supplemental statement of errors" (Doc. 26) appear to be the same in substance. Accordingly, plaintiff's statement of specific errors (Doc. 14) is denied as moot and this Report and Recommendation is before the Court on plaintiff's supplemental statement of specific errors (Doc. 26).

## I.  Procedural Background

Plaintiff filed applications for DIB and SSI in April 2010, alleging disability due to Post-Traumatic Stress Disorder ("PTSD"), depression, anxiety, fibromyalgia and muscle weakness. Plaintiff's applications were granted with an onset disability date of October 1, 2008.  (Tr. 93-103).  The administrative law judge ("ALJ") concluded that "Medical Improvement is expected with appropriate treatment.  Consequently, a continuing disability review is recommended in 18 months."  (Tr. 103).  The Commissioner conducted a continuing disability review and determined that plaintiff's disability ceased on February 1, 2018.  (Tr. 157-59).

This determination was upheld upon reconsideration by a state agency Disability Hearing Officer.  (Tr. 189-200).  Proceeding pro se, plaintiff requested and was granted a *de novo* hearing before an ALJ.  The hearing on October 11, 2019 was postponed for plaintiff to obtain representation.  (Tr. 59, 62-63).  After plaintiff secured counsel, ALJ Peter J. Boylan held a subsequent hearing on February 28, 2020, at which plaintiff and a vocational expert ("VE") appeared and testified.  (Tr. 18-53).  On March 12, 2020, the ALJ issued a decision finding that plaintiff's disability ended as of February 1, 2018, and she has not become disabled again since that date.  (Tr. 1621-40).  Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II.  Applicable Law

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

When, as here, a recipient of disability benefits challenges the cessation of benefits, the central issue is whether the recipient's medical impairments have improved to the point where she is able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1); *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007). Whether an individual's entitlement to benefits continues depends on whether "there has been any medical improvement in [the individual's] impairment(s) and, if so, whether this medical improvement is related to [the individual's] ability

to work." 20 C.F.R. §§ 404.1594(b), 416.994(b).

The cessation evaluation process is a two-part process. *See Kennedy*, 247 F. App'x at 764-65. The first part of the process focuses on medical improvement. *Id.* at 764. The implementing regulations define "medical improvement" as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled." *Id.* at 764-65 (citing 20 C.F.R. § 404.1594(b)(1)). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the individual's] impairment(s). . . . 20 C.F.R. §§ 404.1594(b)(1)(i), 416.994(b)(1)(i). If there has been a decrease in the severity of the impairments since the favorable decision, the medical improvement is related to the individual's ability to work only if there has been a corresponding 'increase in [the claimant's] functional capacity to do basic work activities. . . .'" *Kennedy*, 247 F. App'x at 765 (quoting 20 C.F.R. § 404.1594(b)(3)). *See also Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 361 (6th Cir. 2001).

Medical improvement is "determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. §§ 404.1594(b)(2), 416.994(b)(2). The date of the most recent ALJ hearing, not the cessation of benefits date, is the relevant point of comparison for determining medical improvement subsequent to the initial award. *Difford v. Secretary of Health & Human Services*, 910 F.2d 1316, 1320 (6th Cir. 1990).

That is, the ALJ must consider the plaintiff's condition at the time of the ALJ hearing and if the evidence shows she was disabled as of that date, her benefits should continue even if she was not disabled as of the cessation date. *McNabb v. Barnhart*, 340 F.3d 943, 944 (9th Cir. 2003) (citing *Difford*, 910 F.3d at 1319-20).

The second part of the cessation analysis focuses on whether the individual has the ability to engage in substantial gainful activity. *Kennedy*, 247 F. App'x at 765. The implementing regulations for this part of the evaluation incorporate many of the standards set forth in the regulations that govern initial disability determinations. *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f)(7)). The difference is that "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f)(7); *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991)). An increase in the claimant's functional capacity will lead to a cessation of benefits only if, as a result, the claimant can perform her past work or other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1594(f)(7), (8), 416.994(f)(7), (8). "Should substantial evidence demonstrate that the individual is able to engage in substantial gainful activity because of medical improvement related to the individual's ability to work, the Commissioner will terminate the award of disability benefits." *Fawn L. H. v. Kijakazi*, No. 3:20-cv-606, 2022 WL 3039387, at *2 (W.D. Ky. Aug. 1, 2022) (citing 42 U.S.C. § 423(f)(1)).

In deciding whether a recipient's entitlement to disability benefits has ended, the Commissioner uses the eight-step sequential evaluation process outlined in 20 C.F.R. §§ 404.1594(f)(1)-(8) and 416.994(f)(1)-(8). *Kennedy*, 247 F. App'x at 764. The steps are:

(1) Are you engaging in substantial gainful activity?  If you are . . . we will find disability to have ended. . . .

(2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart?  If you do, your disability will be found to continue.

(3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section?. . . .

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section. . . .

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. . . .

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe. . . .

(7) If your impairment(s) is severe, . . . we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past.  If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment. . . .  If you can, we will find that your disability has ended.  If you cannot, we will find that your disability continues.

20 C.F.R. § 404.1594(f).

There is no presumption of continuing disability.  *Kennedy*, 247 F. App'x at 764 (citing *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-87 n.1 (6th Cir. 1994)).  Instead, the Commissioner applies the above procedures to determine whether the claimant's disability has ended and if she is now able to work.  *Id.*

6

### III.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The most recent favorable medical decision finding that the [plaintiff] was disabled is the decision dated January 26, 2012.  This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the [plaintiff] had the following medically determinable impairments: degenerative disc disease, mitral valve prolapse, shoulder bursitis, fibromyalgia, major depressive disorder, post-traumatic stress disorder (PTSD), and temporomandibular joint disorder.  These impairments were found to result in the residual functional capacity that follows.  She could lift or carry no more than 10 pounds occasionally and less than 10 pounds frequently.  She could stand or walk for two hours per eight-hour workday and sit for six hours per eight-hour workday with normal breaks.  The [plaintiff] could not perform complex tasks.  The [plaintiff] could perform detailed tasks, but only if they were routine and repetitive.  The [plaintiff] could have occasional interaction with the public.  The [plaintiff] needed a break for 15 minutes every hour.

3. Through February 1, 2018, the date the [plaintiff]'s disability ended, the [plaintiff] did not engage in substantial gainful activity (20 CFR 404.1594(f)(1)).

4. The medical evidence establishes that, since February 1, 2018, the [plaintiff] had the following severe medically determinable impairments: degenerative disc disease, mitral valve prolapse, arthropathies, fibromyalgia, major depressive disorder, post-traumatic stress disorder (PTSD), and temporomandibular joint disorder.  These are the [plaintiff]'s current impairments.

5. Since February 1, 2018, the [plaintiff] has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526).

6. Medical improvement occurred as of February 1, 2018 (20 CFR 404.1594(b)(1)).

7. The [plaintiff]'s medical improvement is related to the ability to work because it resulted in an increase in the [plaintiff]'s residual functional capacity (20 CFR 404.1594(c)(3)(ii)).

8. Since February 1, 2018, considering the impairments present at the CPD and the [plaintiff]'s current impairments, the [plaintiff] has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the limitations that follow. The [plaintiff] is limited to frequent climbing, stooping, kneeling, crouching, and crawling. She can frequently balance on narrow, slippery, or uneven surfaces. The [plaintiff] cannot perform at a production rate pace. She is limited to simple work-related decisions. The [plaintiff] can interact with coworkers and the public on a superficial basis, with superficial defined as no tandem work and no negotiation. She can tolerate occasional changes in a routine work setting.

9. As of February 1, 2018, the [plaintiff] was unable to perform past relevant work (20 CFR 404.1565).[3]

10. On February 1, 2018, the [plaintiff] was a younger individual age 18-49 (20 CFR 404.1563).

11. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

12. Beginning on February 1, 2018, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

13. Since February 1, 2018, considering the [plaintiff]'s age, education, work experience, and residual functional capacity based on the impairments present as of February 1, 2018, the [plaintiff] was able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).[4]

14. The [plaintiff]'s disability ended as of February 1, 2018, and the [plaintiff] has not become disabled again since that date (20 CFR 404.1594(f)(8)).

(Tr. 1626-39).

---

[3] Plaintiff's past relevant work included a project secretary and administrative assistant, both skilled, sedentary positions. (Tr. 1638).

[4] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as housekeeper/cleaner (200,000 jobs nationally), marker (125,000 jobs nationally), and routing clerk (95,000 jobs nationally) and representative sedentary, unskilled positions such as document preparer (20,000 jobs nationally), cutter/paster (12,000 jobs nationally), and addresser (3,000 jobs nationally). (Tr. 50-51, 1638-39).

## IV.  Specific Errors

On appeal, plaintiff alleges that the ALJ erred by: 1) finding that the opinions of the state agency physical consultants, Dr. Rannie Amiri and Dr. Venkatachala Sreenivas, were persuasive; 2) finding that the opinions of the state agency psychological consultant, Todd Finnerty, Psy.D., were persuasive; 3) finding that the opinion of the consultative physical examiner, Dr. Noor Hassan, was somewhat persuasive; 4) determining that plaintiff's activities of daily living established the ability to perform light work; 5) failing to resolve the conflict between the VE's testimony and the DOT pursuant to SSR 00-4p; 6) failing to consider the effect of plaintiff's non-severe impairment of endometriosis on her ability to work; and 7) failing to address what impact, if any, plaintiff's sleep problems and fatigue have on her ability to engage in work-related activities.  (Doc. 26).

### 1. The ALJ's evaluation of the opinions from the state agency physicians is supported by substantial evidence.

In plaintiff's first and second assignments of error, plaintiff alleges the ALJ erred in finding the state agency's opinions persuasive.  (Doc. 26 at PAGEID 3392-93).  Specifically, in plaintiff's first assignment of error, plaintiff argues the ALJ erred in finding "that the opinions of the [s]tate agency physical consultants, Dr. Rannie Amiri (Tr. 130-131), and Dr. Venkatachala Sreenivas (Tr. 626-633), were persuasive" because neither "doctor ever examined Plaintiff, nor did they have the opportunity to review any of the medical evidence which was submitted to the file after the dates of their respective reviews. . . ."  (*Id*. at PAGEID 3392).  In plaintiff's second assignment of error, plaintiff argues the ALJ erred by finding the opinions of "the [s]tate agency

psychological consultant Todd Finnerty, Psy.D., were persuasive" because "Dr. Finnerty did not

examine Plaintiff, nor did he review any of the medical evidence that was submitted to the file

after the date of his review on May 1, 2018." (*Id*. at PAGEID 3393, citing Tr. 606-33). Plaintiff

"questions how either doctor can assess the extent of her functional abilities and limitations."

(*Id*.) With no accompanying analysis, plaintiff states that the ALJ erred because the state agency

physicians "did not get to review any of the medical evidence contained in Exhibits B1F (Tr.

379-388), or B8F (Tr. 550-556) through B20F (Tr. 1609-1620). . . ." (*Id*. a PAGEID 3392-93).

Contrary to plaintiff's argument, there is nothing inherently objectionable about finding

the opinions of the state agency medical reviewers or consultants more persuasive than other

sources. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary

weight, including controlling weight, to any medical opinion(s) or prior administrative medical

finding(s), including those from your medical sources."); *cf. Reeves v. Comm'r of Soc. Sec.*, 618

F. App'x 267, 274 (6th Cir. 2015) ("[A]n ALJ may provide greater weight to a state agency

physician opinion when the physician's finding and rationale are supported by evidence in the

record."). Moreover, there is no blanket requirement that a case be remanded where medical

evidence postdating a state agency consultant's review is added to the record. *See Spicer v.

Comm'r of Soc. Sec.*, 651 F. App'x 491, 493-94 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at

409) ("[A]n ALJ may rely on the opinion of a consulting or examining physician who did not

have the opportunity to review later-submitted medical records if there is 'some indication that

the ALJ at least considered these facts' before assigning greater weight to an opinion that is not

based on the full record.").

10

Here, the ALJ comprehensively examined the medical record, including the evidence submitted after state agency review, and determined that plaintiff was not disabled, despite the existence of these additional records. (*See* Tr. 1626-36). Specifically, the ALJ considered evidence of record submitted after state agency review, such as plaintiff's infrequent treatment and unremarkable physical examinations that included normal range of motion, strength, sensation, gait, tone, and coordination. (Tr. 1636, citing Tr. 540-49, 566, 576, 590, 654, 657, 736, 742, 746, 749, 753, 762). The ALJ also considered mental status examinations submitted after state agency review that show normal mood, affect, behavior, judgment, and thought content. (Tr. 1637, citing Tr. 416, 434, 499, 524, 561, 565-66, 576, 590, 603, 653, 655, 736, 743, 762). The ALJ reasonably determined that this evidence, which post-dated the opinions of the state agency consultants, was consistent with the physical and mental limitations imposed by the consultants. Plaintiff has cited to no other evidence which would call into question the ALJ's conclusions. Accordingly, to the extent that plaintiff argues that the ALJ erred in finding the state agency opinions persuasive, the ALJ's decision in this regard is supported by substantial evidence. Therefore, plaintiff's first and second assignments of error should be overruled.

**2. The ALJ's evaluation of Dr. Noor Hassan is supported by substantial evidence.**

In her third assignment of error, plaintiff alleges the ALJ erred by finding "that the opinion of consultative physical examiner Dr. Noor Hassan was somewhat persuasive." (Doc. 26 at PAGEID 3393). In a single sentence, plaintiff argues that "no weight should be given to Dr. Hassan's opinion since the ALJ specifically noted in his decision that "*Dr. Hassan's opinion*

11

*is vague, as he did not provide a specific opinion on the claimant's functional abilities and limitations in vocationally relevant terms.*"  (*Id*. at PAGEID 3393-94) (emphasis in original).

Plaintiff has waived any argument pertaining to the ALJ's evaluation of the opinion from Dr. Hassan by failing to develop it either legally or factually in her Statement of Errors.  "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). *See also Rice v. Comm'r of Soc. Sec*., 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument challenging an ALJ's non-disability determination amounts to a waiver of that argument).  In its entirety, plaintiff's third assignment error consists of two sentences. Plaintiff failed to develop this argument legally or factually, provide any analysis, or cite to any specific treatment notes or reasons as to why plaintiff believes the ALJ committed error in evaluating Dr. Hassan's opinion.  Therefore, this assignment of error should be overruled.  Nor does plaintiff explain the significance of the alleged error on the non-disability finding in this case or how it "would have changed the ALJ's assessment of her functional limitations." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (cursory argument that ALJ failed to find impairment severe was waived).  Therefore, this assignment of error should be overruled.

### 3.  The ALJ did not err in analyzing plaintiff's activities of daily living.

In plaintiff's fourth assignment of error, plaintiff argues that the ALJ erred by "not fully explain[ing]" how plaintiff's daily activities equate to being able to perform light work.  (Doc. 26 at PAGEID 3394).  Plaintiff alleges, "The fact that Plaintiff may be able to sporadically

perform those activities [of daily living] does not necessarily mean that she is capable of performing work on a sustained basis eight hours a day, five days a week." (*Id.*).

"Although the ability to do household [and other] chores is not direct evidence of an ability to do gainful work" under 20 C.F.R. § 404.1572, "[a]n ALJ may . . . consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997)). *See also Blacha v. Sec. of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("[A]n ALJ may consider household and social activities in evaluating complaints of disabling pain."); *Masters v. Comm'r of Soc. Sec.*, 707 F. App'x 374, 379 (6th Cir. 2017) ("The ALJ reasonably noted that despite her symptoms, [the plaintiff] remains able to perform routine, daily tasks that he viewed as inconsistent with her allegations that her pain and symptoms were completely debilitating); *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 417 (6th Cir. 2020) ("[T]he ALJ reasonably concluded that [the plaintiff's] subjective evaluations of his physical abilities was inconsistent with his daily activities, his recent part-time work as a 'clean-up man,' his golf trip and cross-country trip to and from Colorado, his shoveling of snow, and his carpet installation," and substantial evidence supported the ALJ's conclusion that the plaintiff experienced "mild to moderate functional limitations in his ability to perform basic work activities. . . .").

Here, the ALJ found that plaintiff's complaints of pain and functional limitations were inconsistent with her daily activities, including the ability to groom dogs, care for, and ride, horses, cook, clean, garden, drive, grocery shop, do yoga, take nature walks, and engage in

hobbies on a daily basis such as paint, write poetry, journal, and meditate. (Tr. 1636). The ALJ found that plaintiff's ability to engage in the above activities "indicate[s] the claimant has been more capable than she alleges" and "it appears that despite her impairments, she has engaged in a somewhat normal level of daily activity and interaction" (*Id.*).

While plaintiff argues that the ALJ overstated plaintiff's activities of daily living, the ALJ properly considered this evidence as one factor in evaluating plaintiff's alleged symptom severity. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997)) ("[T]he ALJ properly considered [the plaintiff's ability to perform day-to-day activities *as one factor* in determining whether [the plaintiff's] testimony was credible.") (emphasis added).

Plaintiff's fourth assignment of error should therefore be overruled.

**4. The ALJ did not err at Step Five of the sequential evaluation process.**

In plaintiff's fifth assignment of error, plaintiff alleges the ALJ erred by concluding that "the VE's testimony is consistent with the information contained in the DOT [Dictionary of Occupational Titles]. . . ." (Doc. 26 at PAGEID 3395, citing Tr. 1639). Plaintiff argues that the ALJ "violated SSR 00-4p by failing to resolve the conflict between the VE's testimony and the DOT" concerning the "occupational evidence provided by the VE and the information in the DOT." (*Id.* at PAGEID 3396-97). As best the Court can discern, plaintiff argues that the ALJ's RFC limiting plaintiff to simple work-related decisions limited plaintiff "to reasoning level '1' jobs" under the DOT and is inconsistent with the jobs that the VE testified a hypothetical claimant could perform. (*Id.* at PAGEID 3395).

14

The ALJ has a duty under Social Security Ruling 00-4p to develop the record and ensure there is consistency between the VE's testimony and the DOT. SSR 00-4p, 2000 WL 1898704. SSR 00-4p specifically provides, in pertinent part:

> Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

*Id*. at *2.

Where the ALJ questions the VE and the VE testifies that there is no conflict with the DOT, the Sixth Circuit has repeatedly held that the ALJ is under no further obligation to interrogate the VE, especially where the plaintiff is afforded a full opportunity to cross-examine the VE. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009). *See also Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013); *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008). The ALJ is only required to develop the record further where the conflict between the DOT and the VE's testimony is apparent. *See* SSR 00-4p, 2000 WL 1898704, at *4 ("If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict."). Moreover, "[t]he Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Comm'r of Soc. Sec.*, No. 1:11-cv-1290, 2012 WL 4434078, at *3 (N.D. Ohio Sept. 24, 2012) (finding the

plaintiff's failure to raise objections to the VE's testimony waived the argument on appeal) (citing *Hammond v. Chater*, No. 96-3755, 1997 WL 338719, at *3 (6th Cir. June 18, 1997)). *See also Turner v. Comm'r of Soc. Sec.*, No. 2:19-cv-900, 2019 WL 5781608, at *5 (S.D. Ohio Nov. 5, 2019), *report and recommendation adopted*, 2020 WL 132269 (S.D. Ohio Jan. 13, 2020) (the plaintiff "failed to raise his challenge to the VE's testimony at the administrative hearing and therefore waived it" because the ALJ complied with his obligations under SSR 00-4p by asking the VE whether a conflict existed between his testimony and the DOT and the VE testified that his testimony was consistent with the DOT); *Lyon v. Comm'r of Soc. Sec.*, No. 1:11-cv-1104, 2013 WL 1149967, at *4 (W.D. Mich. Mar. 19, 2013) (the plaintiff's challenge to the VE's testimony was waived because the plaintiff failed to object to the testimony at the administrative hearing).

Here, prior to questioning the VE, the following colloquy occurred between the ALJ and the VE:

> ALJ: Do you understand that I will assume your testimony's consistent with the information in the *Dictionary of Occupational Titles* unless you tell me otherwise?
>
> VE: Yes.

(Tr. 47) (emphasis in original).

After the VE responded and the ALJ questioned the VE, the ALJ turned the questioning over to plaintiff's counsel. (Tr. 51). Plaintiff's counsel, however, did not question the VE about any apparent inconsistencies between his testimony and the DOT, nor did plaintiff's counsel bring any potential conflicts to the ALJ's attention after the hearing. (*See Id.*). Counsel was afforded a full opportunity to cross-examine the vocational expert, and the ALJ had no

affirmative duty under SSR 00-4p to conduct his own interrogation of the VE to determine the accuracy of the vocational testimony. *See Lindsley*, 560 F.3d at 606 ("Nothing in S.S.R. 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.") (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)); *see also Lee*, 529 F. App'x at 715 (the ALJ asked the VE if her testimony was consistent with the DOT, the VE answered that it was, and "[t]his effectively satisfied the Commissioner's burden" particularly because the plaintiff's "representative could have—but did not—cross-examine the VE concerning her representation"). Because the ALJ specifically asked the VE if his testimony was consistent with the DOT and the uncontradicted testimony of the VE indicated that no conflict existed, the ALJ did not commit reversible error at Step Five of the sequential evaluation process. Accordingly, plaintiff's fifth assignment of error should be overruled.

### 5. The ALJ's RFC is supported by substantial evidence.

In plaintiff's sixth assignment of error, plaintiff alleges that the ALJ "failed to comply with SSR 96-8p by failing to consider the effect of Plaintiff's endometriosis on her ability to work." (Doc. 26 at PAGEID 3398). Plaintiff cites, with no accompanying explanation, hundreds of pages of medical records in support of the general proposition that plaintiff experienced symptoms related to her non-severe impairment of endometriosis. (*Id.*, citing Tr. 1104-1132, 1133-1579, 1580-1608, 1609-1620). Plaintiff argues that "[a]t the very least, the ALJ should have addressed what impact the chronic pain and discomfort that Plaintiff experiences from the endometriosis condition has on her ability to work." (*Id.*).

The Social Security regulations vest the ALJ with responsibility "for reviewing the evidence and making administrative findings of fact and conclusions of law." 20 C.F.R. § 404.1513a(b). In determining disability, the ALJ will consider the medical opinions in the case record along with the other relevant evidence. 20 C.F.R. § 404.1527(b) (citing 20 C.F.R. § 404.1520b). A claimant's RFC is an assessment of the most that a claimant "can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The Social Security regulations vest the ALJ with the responsibility of assessing an individual's RFC. *See* 20 C.F.R. § 404.1546(c) (the responsibility for assessing a claimant's RFC at the administrative hearing level lies with the ALJ). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3).

Plaintiff does not argue that the ALJ erred by concluding that plaintiff's endometriosis was not a severe impairment. Rather, plaintiff argues that the ALJ erred by failing to "address[] what impact the chronic pain and discomfort that Plaintiff experiences from the endometriosis condition has on her ability to work." (Doc. 26 at PAGEID 3398). Essentially, plaintiff alleges the ALJ failed to consider plaintiff's non-severe impairment of endometriosis in assessing plaintiff's RFC.

The ALJ discussed plaintiff's pelvic pain and endometriosis as follows:

The claimant has also sought treatment for pelvic pain. In 2015, an ultrasound showed ovarian cysts (B17F/9). Laparoscopic surgery showed pelvic adhesion and a lesion that was consistent with endometriosis on the anterior broad ligament (B17F/9). The claimant was offered the option of surgery, but she declined (B4F/65). The claimant reported increased pain in January 2018, but there is no evidence the claimant [] sought further treatment until April 2018, at which time she reported her pain had mostly resolved and she did not want further treatment (B9F/9, 45). The claimant reported pain in July 2018 and was offered management

> options; however, she stated she wanted to see a reproductive endocrinologist for other opinions (B15F/69). It was noted the claimant did not have a formal pathological diagnosis of endometriosis, though her physician suspected it (B15F/68). The claimant took medication for six weeks, then stopped, started a lower dose for six weeks, and then stopped again (B15F/43). In April 2019, the claimant reported her symptoms were stable/improved with meditation, and yoga, but she was afraid endometriosis might "invade" her bowels and she wanted to discuss surgery (B15F/43). The claimant denied treatment with Mirena or surgery (B15F/44). The claimant later elected to try the Mirena IUD in September (B15F/31, 36).

(Tr. 1627). Although the ALJ determined that endometriosis was not a severe impairment, the ALJ stated he "accounted for all of the claimant's 'severe' and 'non-severe' medically determinable impairments when assessing [her] residual functional capacity." (*Id*.). The ALJ specifically considered plaintiff's allegations of pelvic pain, spinal pain, and leg pain, as well as her allegations of fatigue, depression, and side effects from medication, in assessing plaintiff's RFC. (Tr. 1632). However, the ALJ determined that plaintiff's alleged symptoms were not entirely consistent with the medical and other evidence as explained in his decision. The ALJ thoroughly discussed the medical evidence of record and determined that plaintiff was more capable than she alleged. Plaintiff has failed to point to specific evidence showing her endometrial pelvic pain imposed greater limitations than those assessed by the ALJ. Her general citation to hundreds of pages of the record, without specific citations and a developed argument explaining how the ALJ erred, is insufficient to justify a remand on this basis. *See Jones v. Comm'r of Soc. Sec.*, No. 3:12-cv-2986, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record for evidence to support [the plaintiff's] 'argument' or find law supporting her claims. This Court does not conduct a *de novo* review in social security proceedings, and certainly cannot be expected to craft an argument on

[the plaintiff's] behalf. As such, this assignment of error should be deemed waived.") (quotation marks and citations omitted); *Aun v. Comm'r of Soc. Sec. Admin*., No. 3:19-cv-11143, 2020 WL 5223323, at *3 (E.D. Mich. Aug. 3, 2020), *report and recommendation adopted sub nom*. *Aun v. Comm'r of Soc. Sec*., No. 19-cv-11143, 2020 WL 5209366 (E.D. Mich. Aug. 31, 2020) (finding the plaintiff's argument was waived when the plaintiff only made "general references to two medical record exibits, which together constitute[d] 134 pages, and [the] Plaintiff's hearing testimony, which constitute[d] approximately fourteen pages of the transcript"). Because plaintiff failed to develop this argument legally or factually, provide any analysis, or cite to any specific treatment notes or reasons as to why plaintiff believes the ALJ committed error in the RFC determination, this assignment of error should be overruled.

### 6. The ALJ did not err by failing to address what impact plaintiff's sleep problems and fatigue has on her ability to engage in work-related activities.

In plaintiff's seventh assignment of error, plaintiff states that the ALJ "failed to address what impact, if any, Plaintiff's sleep problems and fatigue has on her ability to engage in work-related activities." (Doc. 26 at PAGEID 3398). In its entirety, plaintiff argues: "Exhibits B16F (Tr. 1031-1103), B17F (Tr. 1104-1132), B18F (Tr. 1133-1579), & B19F (Tr. 1580-1608), clearly establish that Plaintiff consistently complained of sleep problems and fatigue as a result of her impairments. Unfortunately, those issues were not addressed by the ALJ." (*Id*. at PAGEID 3398-99).

Contrary to plaintiff's argument, the ALJ discussed plaintiff's allegations of fatigue and sleep issues in his decision. For example, the ALJ noted that in May 2017, plaintiff reported fatigue after walking the Appalachian Trail. (Tr. 1633, citing Tr. 511). The ALJ noted

plaintiff's reports in January 2019 that she exercised regularly and denied weakness or malaise/fatigue. (Tr. 1634, citing Tr. 656-57). While later that month plaintiff reported fatigue and weakness, she attributed it to a new medication. (Tr. 1634, citing Tr. 653-54). The ALJ noted that plaintiff reported fatigue at a visit in October 2019, along with other symptoms (Tr. 1634, citing Tr. 734), but later that month she reported going on nature walks with her dog, did yoga, and rowed at the gym. (Tr. 1634, citing Tr. 721). The ALJ further noted that in November 2019, plaintiff reported improved sleep. (Tr. 1635, citing Tr. 1325). To the extent plaintiff believes the ALJ failed to accurately assess plaintiff's problems with fatigue and sleep, it is incumbent upon plaintiff to support any such argument with specific citations to the record.

Here, plaintiff's seventh assignment of error is a mere three sentences and fails to include any legal or factual analysis pertaining to how the ALJ supposedly erred. Plaintiff has not met her burden to show error on the ALJ's part. *See Abduhamdeh v. Saul*, No. 1:20-cv-954, 2021 WL 3375422, at *9 (N.D. Ohio July 16, 2021), *report and recommendation adopted sub nom. Abuhamdeh v. Comm'r of Soc. Sec.*, No. 1:20-cv-00954, 2021 WL 3371142 (N.D. Ohio Aug. 3, 2021) (finding the plaintiff's argument waived when the plaintiff only included "two sentences" in his assignment of error pertaining to the alleged error by the ALJ). *See also Brunton v. Kijakazi*, No. 5:20-cv-2233, 2022 WL 950446, at *2 (N.D. Ohio Mar. 30, 2022) ("Plaintiff provided no meaningful analysis arguing why the ALJ's determination rises to reversible error. The Court cannot take such an undeveloped issue and transform it into a substantive argument without improperly becoming an advocate for Plaintiff."). Therefore, plaintiff's seventh assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

For the reasons stated herein, plaintiff's Supplemental Statement of Errors (Doc. 26) be

**OVERRULED**, and the Commissioner's non-disability finding be **AFFIRMED**. **IT IS**

**FURTHER RECOMMENDED** that judgment be entered in favor of the Commissioner and this

case be closed on the docket of the Court

Date: 8/12/2022

Karen L. Litkovitz
Chief United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JULIE W.,
     Plaintiff,

     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:21-cv-185
Black, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of
the recommended disposition, a party may serve and file specific written objections to the
proposed findings and recommendations.  This period may be extended further by the Court on
timely motion for an extension.  Such objections shall specify the portions of the Report objected
to and shall be accompanied by a memorandum of law in support of the objections.  If the Report
and Recommendation is based in whole or in part upon matters occurring on the record at an oral
hearing, the objecting party shall promptly arrange for the transcription of the record, or such
portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the
assigned District Judge otherwise directs.  A party may respond to another party's objections
**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in
accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140
(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

23